UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ELI RESEARCH, LLC and AMERICAN
ACADEMY HOLDINGS,

        Plaintiffs,

v.                            Case No:   2:13-cv-695-FtM-38CM

MUST HAVE INFO INC., SAMANTHA
SALDUKAS and LACY GASKINS,

        Defendants.
_____/

## ORDER[1]

      This matter comes before the Court on Defendants' Motion to Dismiss Plaintiffs'

Second Amended Complaint (Doc. #43) filed on March 21, 2014.   Plaintiffs filed a

Response to Defendants' Motion to Dismiss (Doc. #47) on April 4, 2014.  Thus, the Motion

is ripe for review.

### Background

      Plaintiffs are a research and information company engaged in the business of

publishing coding newsletters for use by hospitals, physicians, and health care providers,

and its affiliate.   (Doc. #37 at 2, 6).   Defendants are former employees of Plaintiff ELI

Research, who now operate their own research and information company engaged in

publishing medical coding newsletters.  (Doc. #37 at 6-8).   In 2002, Plaintiff ELI Research

[1] Disclaimer:  Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites.  These hyperlinks are provided only for users' convenience.  Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees.  By allowing hyperlinks to other Web sites, this court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites.  The court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

hired Defendant Samantha Saldukas to serve as President of one of its subsidiaries, The Coding Institute, which published coding newsletters, among others, titled "Cardiology Coding Alert" and "Family Practice Coding Alert." (Doc. #37 at 7). Three years later, in 2005, Plaintiff ELI Research hired Defendant Lacy Gaskins to serve as the Events Manager for The Coding Institute. (Doc. #37 at 7).

Because Defendants' employment with Plaintiff ELI Research required them to become intimately familiar with Plaintiff ELI Research's methodologies, materials, databases, and information crucial to its business, both Defendants were required to sign employment agreements. (Doc. #37 at 6-7). Defendant Samantha Salduka's employment agreement entailed confidentiality and non-compete agreements. (Doc. #37 at 6). Defendant Lacy Gaskin's employment agreement contained non-compete, confidentiality, and non-solicitation agreements. (Doc. #37 at 6). According to Plaintiff ELI Research, these employment agreements bound Defendants not to possess, not to disseminate, and not to use the methodologies, materials, databases or information crucial to Plaintiffs' business. (Doc. #37 at 6-7).

After ending her employment relationship with Plaintiff ELI Research, Defendant Samantha Saldukas founded her own research and information company, Coding Leader, which publishes its own medical coding newsletters. (Doc. #37 at 8). Defendant Lacy Gaskin also terminated her employment relationship with Plaintiff ELI Research and joined Defendant Samantha Saldukas at Coding Leader, serving as its Vice President. (Doc. #37 at 8). Among the various publications that Defendant Coding Leader produces, Plaintiff ELI Research takes issue with two: "Cardiology Coding Advisor" and "Family Practice Coding Advisor." (Doc. #37 at 8).

Plaintiff ELI Research avers that in producing Cardiology Coding Advisor and Family Practice Coding Advisor, Defendants "used part or all of [Plaintiff ELI Research's] materials, databases, or other information" in their work for Defendant Coding Leader. (Doc. #37 at 8).  Specifically, Plaintiff ELI Research avers Defendants used part or all of its style guides, editorial manuals, subscriber lists, marketing plans and tactics, renewal dates, subscriber counts, cancelled subscriber lists, renewal rates, source relationships, source databases, consulting editor contact relationships, consulting editor information, reader surveys, customer service protocol, company financial information, and profitability reports.  (Doc. #37 at 4).  Furthermore, Plaintiff ELI Research's affiliate, American Academy Holdings ("AAH"), recently joined this action, asserting that in addition to the above transgressions, Defendants infringed on Plaintiff AAH's registered service marks in various locations, including on Defendants' website.  (Doc. #37 at 15).

Based on Defendants' alleged misuse and misrepresentation of Plaintiffs' materials and information, Plaintiffs filed the instant action, asserting eight counts, including civil conspiracy (Count 1), misappropriation of trade secrets (Count 2), unfair and deceptive trade practices (Count 3), conversion (Count 4), negligence (Count 5), gross negligence (Count 6), breach of contract (Count 7), and trademark infringement (Count 8).  (*See* Doc. #37 at 9-15).  Defendants now move to dismiss Plaintiffs' Second Amended Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6), for Plaintiffs' failure to state a claim for which relief can be granted.  (*See* Doc. #43).

### Legal Standard

In deciding a Rule 12(b)(6) motion to dismiss, the Court limits its consideration to well-pleaded factual allegations, documents central to, or referenced in, the complaint,

and matters judicially noticed. *La Grasta v. First Union Sec., Inc.,* 358 F.3d 840, 845 (11th Cir.2004). The Court must accept all factual allegations in Plaintiff's Complaint as true and take them in the light most favorable to the plaintiff. *Pielage v. McConnell,* 516 F.3d 1282, 1284 (11th Cir.2008). Conclusory allegations, however, are not entitled to a presumption of truth. *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (discussing a Rule 12(b)(6) dismissal); *Marsh v. Butler County, Ala.,* 268 F.3d 1014, 1036 n. 16 (11th Cir.2001).

The Court employs the *Twombly–Iqbal* plausibility standard when reviewing a complaint subject to a motion to dismiss. *Randall v. Scott,* 610 F.3d 701, 708, n. 2 (11th Cir.2010). A claim is plausible if the plaintiff alleges facts that "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. The plausibility standard requires that a plaintiff allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" that supports the plaintiff's claim. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *Marsh,* 268 F.3d at 1036 n. 16. Thus, "the-defendant-unlawfully-harmed me accusation" is insufficient. *Iqbal,* 556 U.S. 662, 677, 129 S.Ct. 1937, 173 L.Ed.2d 868. "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal modifications omitted). Further, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986).

## Discussion

Defendants bring this Motion, contending that Plaintiffs' Second Amended Complaint should be dismissed for failing to provide the necessary factual detail to satisfy

the plausibility standard.  (Doc. #43 at 8).  Specifically, Defendants assert that Counts 1, 2, 3, 5, 6, and 8 of Plaintiffs' Second Amended Complaint are "riddled with bare assertions and speculations, without any facts to support such claims."  (Doc. #43 at 8).  In response, Plaintiffs assert that their Second Amended Complaint contains enough factual detail to satisfy the plausibility standard.  (*See* Doc. #47).

Because the Court is sitting in diversity, before analyzing the factual sufficiency of each count, the Court must conduct a conflict-of-laws analysis.  Federal courts sitting in diversity apply the conflict-of-laws rules of the forum state.  *Grupo Televisa, S.A. v. Telemundo Communications Group, Inc.,* 485 F.3d 1233, 1240 (11th Cir.2007) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)). First, the Court must characterize the legal issue, such as whether it is a contract, tort, or property issue. *Grupo Televisa,* 485 F.3d at 1240. After characterizing the legal issue, the Court then determines the choice-of-law rule that the forum state applies to that particular type of issue. *Id.* (citing *Acme Circus Operating Co., Inc. v. Kuperstock,* 711 F.2d 1538, 1540 (11th Cir.1983)).

In Florida, courts resolve conflict-of-laws disputes according to the "most significant relationship" test as outlined in the Restatement (Second) of Conflict of Laws. *Grupo Televisa,* 485 F.3d at 1240 (citing *Bishop v. Florida Specialty Paint Co.,* 389 So.2d 999, 1001 (Fla.1980)). Courts consider the following factors when determining the most significant relationship: (a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (d) the place where the relationship, if any, between the parties is centered. *McMahan v. Barker,* No. 6:06–cv–

248–Orl–28KRS, 2008 WL 68595 at *5 (M.D.Fla. Jan. 4, 2008) (citing Restatement (Second) Conflict of Law § 145 (1971) ("Restatement")).

### A. Count 1 – Civil Conspiracy

As noted above, when conducting a conflict-of-law analysis, the Court must first characterize the legal issue.  Although a claim for civil conspiracy is not an independent tort claim in either Florida or North Carolina, each civil conspiracy count must be associated with an independent tort to provide a basis for the claim.  Based on this required association, the Court finds that in similar fashion to tort claims, the "most significant relationship" test specified above governs Count 1's choice-of-law analysis, determining whether Florida or North Carolina law controls.

Under the "most significant relationship test," the first factor that the Court looks to is the location where the injury occurred.  Here, Plaintiffs are based out of and conduct business from the state of North Carolina.  Because Plaintiffs make no specific reference to injuries, whether in Florida or North Carolina, it logically follows that any injury that Plaintiffs would have suffered would have been at their place of business in North Carolina.  As such, the Court finds that the first factor points to North Carolina law controlling.  The second factor of the "most significant relationship" test asks the Court to identify the location where the conduct that caused the injury occurred.  In contrast to the first factor, Defendants are based out of and conduct business from the state of Florida.  Therefore, in similar fashion, because Plaintiffs did not explicitly mention a specific location where the harms occurred, it logically follows that any acts allegedly committed by Defendants that would have caused Plaintiffs' injury would have occurred from their

6

business location in Florida.  Consequently, the Court finds that the second factor points to Florida law controlling.

The third factor of the "most significant relationship" test asks the Court to identify the place of incorporation and place of business of the parties.  As specified above, Plaintiffs are based out of North Carolina, while Defendants are based out of Florida.  As such, the Court finds that the third factor fails to provide any indication of whether North Carolina or Florida law controls Count 1. The fourth and final factor of the "most significant relationship" test asks the Court to identify where a relationship, if any, between the parties would be centered.  As noted in the facts section above, this action was brought against three defendants.  Of the three Defendants, two Defendants are ex-employees of the Plaintiffs, while the third Defendant is a corporation founded and operated by those two ex-employees. Therefore, a relationship, if any, between the parties would likely be centered at Plaintiffs' place of business located in North Carolina, which points to North Carolina law controlling.

Based on the above analysis, indicating that two of the four factors point to North Carolina, while only one factor points to Florida, the Court finds that, at this stage of the litigation, North Carolina law governs Count 1, alleging civil conspiracy.  However, the Court's analysis does not end here.  Rather, the Court must now evaluate the factual sufficiency of Count 1 to determine whether it meets the pleading standards elicited by the Supreme Court in *Iqbal*, 556 U.S. 662.

North Carolina law provides that the "elements of a civil conspiracy [claim] are: (1) an agreement between two or more individuals; (2) to do an unlawful act or to do a lawful act in an unlawful way; (3) resulting in injury to plaintiff inflicted by one or more of the

conspirators; and (4) pursuant to a common scheme." *Privette v. Univ. of N. Carolina at Chapel Hill*, 385 S.E.2d 185, 193 (N.C. Ct. App. 1989) (internal citations omitted). In Count 1 of Plaintiffs' Second Complaint, Plaintiffs allege eleven paragraphs.  Seven of these eleven paragraphs relate to the substance of Plaintiffs' claim, while the remaining four paragraphs generally allege and seek damages. Of the seven substantive paragraphs, the first paragraph simply "re-alleg[es] and incorporate[s] by reference" Plaintiffs' entire preceding fact section – paragraphs 1 through 70.  The remaining six substantive paragraphs state, in full:

> 72.   The acts and omissions of Defendants constitute a civil conspiracy.  [Plaintiffs are] entitled to recover damages as a result.

> 73.   Upon information and belief, a premeditated, calculated and established agreement existed between Defendants to carry out numerous wrongful and unlawful acts which would result in inevitable harm to [Plaintiffs].

> 74.  Among these wrongful and/or unlawful acts, Defendants agreed, planned, and overtly acted to usurp, misappropriate, disseminate, and use [Plaintiffs'] trade secrets.

> 75.  Among these unlawful acts, the Defendants agreed and planned to carry out the acts and omissions which constitute unfair and deceptive trade practices, conversion, negligence, and gross negligence.

> 76.  The Defendants committed numerous overt acts in furtherance of this conspiracy against [Plaintiffs].

> 77. Even if only one conspirator participated in the overt act to further the conspiracy, it follows that all Defendants are jointly and severally liable for all damage caused by that one conspirator to [Plaintiffs].

(Doc. #37 at 9-10).

Here, the Court finds that Plaintiffs' Count 1, alleging civil conspiracy, provides nothing more than "an allegation of parallel conduct and a bare assertion of conspiracy [, which] will not suffice." *Twombly*, 550 U.S. at 556. First, Plaintiffs allege a "premeditated,

calculated, and established agreement," but provide no further factual support regarding this agreement, such as how they came upon the "information and belief" that Defendants formed such an "established" agreement. (Doc. #37 at 9).  Second, Plaintiffs also allege that "Defendants agreed, planned, and overtly acted" with regard to utilizing Plaintiffs' trade secrets, but fail to allege any factual predicate to support this allegation, such as how Defendants allegedly acted or what trade secrets were involved. (Doc. #37 at 9).  In fact, four of Plaintiffs' six substantive paragraphs for Count 1 mention "acts," but not a single one of these four paragraphs provides any definition as to what acts Plaintiffs are referencing.

Without providing the Court with more than conclusory allegations regarding Defendants' alleged acts and agreements, Count 1 remains "close to stating a claim, but without some further factual enhancement it stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Twombly*, 550 U.S. at 557.  Based on the foregoing, Count 1 of Plaintiffs' Second Amended Complaint must be dismissed for failure to state a claim upon which relief can be granted.

### B.  Count 2  – Misappropriation of Trade Secrets Under North Carolina Law

Both Florida and North Carolina courts hold that an action for misappropriation of trade secrets is grounded in tort.  *See Thee Dollhouse Prods. N.C., Inc. v. Fairchild*, 5:08-CV-282-FL, 2009 WL 9112422 at *5 (E.D.N.C. Mar. 30, 2009) (noting that an action for misappropriation of trade secrets is one in tort); *Vance v. Tire Eng'g & Distribution, LLC*, 32 So. 3d 774 (Fla. 2d DCA 2010) ("[A]lleging various intentional torts including . . . misappropriation of trade secrets.").  As such, similar to Count 1, the Court must first

conduct the "most significant relationship" test to determine whether North Carolina or Florida law applies to Count 2, alleging misappropriation of trade secrets.

The first factor of the "most significant relationship" test asks the Court to look at the location where the injury occurred.  Here, the Court finds that this first factor points to North Carolina.  That is, because Plaintiffs' place of business is in North Carolina, it follows that any injury to them from the misappropriation of their trade secrets likely occurred at the location of their business.  The second factor of the "most significant relationship" test asks the Court to look at where the conduct causing the injury occurred. In contrast to the first factor, the Court finds that the second factor points to Florida. Specifically, because Defendants are based out of Florida, it is likely that any action that they took that caused such an alleged injury would have occurred at their place of business.

The third factor of the "most significant relationship" test asks the Court to evaluate the locations of where the parties are incorporated and where their places of business are located.  Here, because Defendants are incorporated and practice business in Florida, and because Plaintiffs are incorporated and practice business in North Carolina, the Court finds that the third factor is inconclusive with regard to pointing to Florida or North Carolina.  The fourth and final factor of the "most significant relationship" test asks the Court to look at the location where the relationship between the parties, if any, is located.   The Court finds that this fourth factor points to North Carolina.  It is undisputed that two of the Defendants are ex-employees of Plaintiffs, while the third Defendant is a company formed and operated by those two ex-employees. As such, it is likely that a relationship, if any, between the parties would be centered at the Plaintiffs' place of

business in North Carolina.  At this stage of the litigation, because two factors point to North Carolina and one factor points to Florida, the Court finds that North Carolina law governs Count 2, alleging misappropriation of trade secrets.

Having determined that, at this stage of the litigation, North Carolina law appears to control Count 2, the Court must now evaluate the factual sufficiency of the count.  North Carolina law provides that in order to establish a *prima facie* case of misappropriation of trade secrets, Plaintiffs must illustrate that Defendants "(1) [knew] or should have known of the trade secret" and "(2) [] had a specific opportunity to acquire it for disclosure or use or has acquired, disclosed, or used it without the express or implied consent or authority of the owner." N.C. Gen. Stat. § 66-155.

In Plaintiffs' Second Amended Complaint, Count 2 is composed of eleven paragraphs.  Of these eleven paragraphs, six generally seek various forms of damages and relief, while the remaining five provide the substance of Plaintiffs' claim.  The first of the five substantive paragraphs "re-allege[s] and incorporate[s] by reference" Plaintiffs' entire preceding fact section – paragraphs 1 through 70.  (Doc. #37 at 10).  The remaining four substantive paragraphs state, in full:

> 83.  The Defendants' acts and omissions constitute violations of North Carolina's trade secrets protection act.  [Plaintiffs] ha[ve] been irreparably harmed and damaged by the acts and omissions of the Defendants.

> 84.  The ELI/GSC Materials are protected by law, including North Carolina law and are "trade secrets" within the definition of N.C. Gen. Stat. § 66-152.

> 85.  [Plaintiffs] expended significant efforts designed to reasonably maintain the secrecy and confidentiality of the ELI/GSC Materials.

> 86.  Defendants, both individually and collectively, misappropriated the trade secrets in violation of the North Carolina Trade Secrets Protection Act, specifically N.C. Gen. Stat. § 66-155.

(Doc. #37 at 10).

As exhibited, Count 2, in similar fashion to Count 1, is devoid of supporting factual predicate.  Although Plaintiffs previously define the "ELI/GSC Materials" term to illustrate what they assert are trade secrets under North Carolina law, Plaintiffs fail to provide any factual support as to how Defendants "misappropriated" these trade secrets.  This lack of factual support is illustrated by the Court's observation that the only action that Plaintiffs assign to Defendants in Count 2 is that "Defendants, both individually and collectively, misappropriated the trade secrets in violation of North Carolina" law.  (*See* Doc. #37 at 10).  Absent additional factual support, a single sentence solely alleging that Defendants "misappropriated" trade secrets in violation of North Carolina law does not suffice to cross the line from probability to plausibility.  *See Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.") (internal quotations and citations omitted). Consequently, Count 2 of Plaintiffs' Second Amended Complaint must be dismissed.

### C.  Count 3 – Unfair and Deceptive Trade Practices Under Florida Law

It is well-established that claims under Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.204, are grounded in tort.  *See Horowitch v. Diamond Aircraft Industries, Inc.*, 526 F.Supp.2d 1236, 1249 (M.D.Fla.2007), *vacated in part on other grounds*, 2009 WL 1537896 (M.D.Fla. June 2, 2009) ("Plaintiff's deceptive trade practices claim sounds in tort.") (citing *Am. Boxing & Athletic Ass'n v. Young*, 911 So.2d 862, 865 (Fla. 2d DCA 2005); *Crowley Liner Servs., Inc. v. Transtainer Corp.*, No. 06–

21995, 2007 WL 433352 at *5 (S.D.Fla. Feb. 6, 2007)).  Although the Court would normally only consider the four "most significant relationship" test factors noted above for a tort claim, the Eleventh Circuit has specified that courts must also look to the comments of the Restatement. *Grupo Televisa, S.A.,* 485 F.3d at 1241-43.

In the comments to Restatement § 145, courts are directed to look to six separate factors for tort claims involving fraud or misrepresentation that occurred in different locales for the parties:

1) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,
2) the place where the plaintiff received the representations,
3) the place where the defendant made the representations,
4) the domicile, residence, nationality, place of incorporation and place of business of the parties,
5) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and
6) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

*Horowitch,* 526 F.Supp.2d at 1249 (citing Restatement § 148).

Here, at this stage of the litigation, only two of these six factors are semi-ascertainable.  As to the first factor, Plaintiffs do not make an explicit allegation that they acted in reliance upon Defendants' representations.  Rather, Plaintiffs primarily base their claim on the allegation that "Defendants' actions . . . caused confusion in the marketplace and negatively affected Plaintiffs' customers and Plaintiffs' relationship with those customers."  (Doc. #37 at 11).  This allegation is not sufficient to provide a meaningful analysis for the first factor based on the fact that the reliance by Plaintiffs and their customers could have been either in Florida, where Defendants are located, or in North Carolina, where Plaintiffs are located.  With regard to the second factor, once again, the

Court finds that Plaintiff's primary allegation quoted above does not provide the Court with enough information to ascertain a meaningful analysis for this factor.

As for the third factor, because Defendants are based in Naples, Florida, the Court finds that this fact leads to the conclusion that Defendants made the alleged representations from this location. In contrast, while the Defendants are based in Naples, Florida, the Plaintiffs are based in North Carolina.  As such, this indicates that the fourth factor does not provide any meaningful help as to determining which jurisdiction's law controls. With regard to the fifth factor, although not necessarily related to a transaction between the parties themselves, the only allegation as to a "tangible thing" is Plaintiffs' reference to Defendants' "publications" in the fact section of their Second Amended Complaint. (Doc. #37 at 8).  Therefore, because Defendants are based in Naples, Florida, it is more likely that the publications were also in Naples, Florida. Finally, because Plaintiffs failed to allege that they relied on Defendants' representations to enter into a contract with Defendants, the sixth factor is also unascertainable.

Because the only two semi-ascertainable factors both point to contacts to Florida instead of contacts to North Carolina, the Court finds that Florida law controls Count 3, alleging unfair and deceptive trade practices.  But the Court's inquiry does not end there. Instead, the Court must now evaluate the factual sufficiency of Plaintiffs' Second Amended Complaint pursuant to the *Iqbal* and *Twombly* standards noted above.  To that end, the Court finds that Count 3 of Plaintiffs' Second Amended Complaint must be dismissed for failure to state a claim upon which relief may be granted.

The Florida Legislature enacted FDUTPA "[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition,

or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2). The Act declares unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). A claim for damages under FDUTPA has three elements: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *City First Mortg. Corp. v. Barton,* 988 So.2d 82 (Fla. 4th DCA 2008) (citation omitted); *see also KC Leisure, Inc. v. Haber,* 972 So.2d 1069, 1073–74 (Fla. 5th DCA 2008).

A deceptive practice is one that is "likely to mislead" consumers. *Davis v. Powertel, Inc.,* 776 So.2d 971, 974 (Fla. 1st DCA 2000). An unfair practice is "one that 'offends established public policy' and one that is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.' " *Samuels v. King Motor Co. of Fort Lauderdale,* 782 So.2d 489, 499 (Fla. 4th DCA 2001) (quoting *Spiegel, Inc. v. Fed. Trade Comm'n,* 540 F.2d 287, 293 (7th Cir.1976)). A deceptive act occurs "if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment. This standard requires a showing of probable, not possible, deception that is likely to cause injury to a reasonable relying consumer." *Zlotnick v. Premier Sales Grp., Inc.,* 480 F.3d 1281, 1284 (11th Cir.2007) (citation and quotations omitted).

Plaintiffs begin their allegations under Count 3 by "re-alleg[ing] and incorporat[ing] by reference" the "facts" section -- paragraphs 1 through 70 -- of their Second Amended Complaint. (Doc. #37 at 11).   Beyond this initial paragraph, Count 3 contains four

paragraphs relating to the substance of the Count and three paragraphs relating to damages.  Plaintiffs' four substantive paragraphs state, in full:

> 94.  Defendant[s'] acts and omissions constitute violations of [FDUTPA], and Plaintiffs have, thereby, been irreparably harmed by the acts and omissions of the Defendants.
>
> 95.  [FDUTPA] prohibits unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce.
>
> 96.  Defendants' misrepresentations, concealments, acts, and/or omissions, individually or collectively in whole or in part, were unfair, deceptive, and oppressive.
>
> 97.  Defendants' misrepresentations, concealments, acts, and/or omissions individually or collectively in whole or in part deceived Plaintiffs, had the tendency to deceive Plaintiffs, and the public.  Defendants' actions have caused confusion in the marketplace and negatively affected Plaintiffs' customers and Plaintiffs' relationship with those customers.

(Doc. #37 at 11).

It appears that Count 3 of Plaintiffs' Second Amended Complaint constitutes nothing more than a prime example of a shotgun pleading, which "mak[es] it virtually impossible for one to decipher which factual allegations are meant to support which claims."  *Liste v. Cedar Fin.*, 8:13-CV-3001-T-30AEP, 2014 WL 4059881 at *1 (M.D. Fla. Aug. 14, 2014) (citing *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1279 (11th Cir.2006)).  Instead of offering factual support for Count 3 beyond incorporating their entire preceding "facts" section, Plaintiffs "tender[] 'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. 662, 678 (internal citations omitted).

Plaintiffs fail to provide any substantiating factual predicate for Count 3, such as what misrepresentations, concealments, acts, or omissions allegedly deceived them and the public.  Moreover, Plaintiffs also fail to provide any support for their allegation that

Defendants' acts caused confusion in the marketplace and negatively affected their customers. In contrast to well-plead factual allegations, Count 3's legal conclusions, which are devoid of factual support, "are not entitled to the assumption of truth." *See Id*. Consequently, Count 3 fails to rise to the plausible level and must be dismissed.

### D. Count 5 – Negligence

There is no dispute that a claim for negligence is sounded in tort. As such, the Court must first conduct a conflict-of-law analysis under the "most significant relationship" test to determine whether Florida's or North Carolina's law controls Count 5 of Plaintiffs' Second Amended Complaint.  Under this test, the first factor directs the Court to look at the location where the injury occurred.  Here, Defendants allegedly owed Plaintiffs a duty to protect "ELI/GSC Materials" and breached that duty by failing to protect such materials. As such, because Plaintiffs are based in North Carolina and are the ones to have allegedly suffered an injury from the breach, it is likely that this injury would have occurred in North Carolina.  The second factor in the most significant relationship test directs the Court to look at the location where the conduct causing the injury occurred.  In contrast to the first factor, if Defendants did in fact breach their alleged duty, it would follow that such a breach, constituting the cause of the injury, would have occurred at their location in Naples, Florida.

While the first two factors indicated one state over the other, this is not the case with the third factor. Instead, the third factor asks the Court to look at the place of incorporation or the place of business of each of the parties.  Here, as noted extensively above, Plaintiffs are based in North Carolina, while Defendants are based in Florida.  As such, the third factor fails to provide an additional indication as to which state's law

controls.  The fourth and final factor asks the Court to look at the place where the relationship, if any, between the parties is centered.  Because two of the Defendants are ex-employees of Plaintiffs and because the third Defendant is a company founded and operated by those two ex-employees, it seemingly follows that the relationship, if any, between the parties is centered at Plaintiffs' place of business in North Carolina.

Based on the above analysis, indicating that two factors point to North Carolina and one factor points to Florida, the Court finds that at this stage of the litigation, it appears that North Carolina law would control Count 5, alleging negligence.  But once again, the Court's inquiry does not end here, and instead continues on to evaluating the factual sufficiency of Count 5.

In order to maintain an action for common law negligence under North Carolina law, Plaintiff must prove "(1) a legal duty; (2) a breach thereof; and (3) injury proximately caused by the breach."  *Bridges v. Parrish*, 366 N.C. 539, 541, 742 S.E.2d 794, 796 (2013).  Plaintiffs' Count 5 is comprised of six paragraphs, including an initial paragraph once again "re-alleg[ing] and incorporat[ing] by reference" their entire fact section -- paragraphs 1 through 70.  (Doc. #37 at 13).   Count 5's remaining paragraphs are comprised of three substantive paragraphs and two generic paragraphs noting Plaintiffs suffered, and asking for, damages.  (Doc. #37 at 13).    Of the three substantive paragraphs, Plaintiffs' complete allegations are:

> 111. Each Defendant owed legal duties to [Plaintiffs] during and after their work for [Plaintiffs].

> 112. Each Defendant owed [Plaintiffs] the legal duty to maintain and protect the confidentiality, secrecy, and privacy of the ELI/GSC Materials.

113. The Defendants breached their duties of care by failing to reasonably maintain and protect the confidentiality, secrecy, and privacy of the ELI/GSC Materials.

(Doc. #37 at 13).

As exhibited, Plaintiffs provide nothing more than "threadbare recitals of a cause of action's elements . . . supported by mere conclusory statements," which the Supreme Court held were inapplicable to "the tenet that a court must accept a complaint's allegations as true." *Iqbal*, 556 U.S. at 663. Plaintiffs provide no factual content as to why each Defendant owes them a duty to protect the materials or how Defendants breached their duties to maintain and protect the materials. By not providing any factual predicate to support Count 5, the Court finds it especially perplexing how a plausible inference could be made that one of the Defendants, Coding Leader, a third-party corporation with no affiliation to Plaintiffs, could owe such duties. Without providing more than conclusory statements in their threadbare recitals, Plaintiffs "stop[] short of the line between possibility and plausibility." *Id.* at 678; *see also Wagner*, 464 F.3d at 1278 n.3 ("With this observation, we do not pass on whether there are sufficient factual predicates in the large fact section prior to the substantive counts that would state a claim with the required particularity. We simply are noting that there are not enough facts in the substantive counts, disregarding the incorporation clauses.").

As such, Count 5 of Plaintiffs' Second Amended Complaint (Doc. #37) must be dismissed.

### E. Count 6 – Gross Negligence

Similar to Count 5, there is no dispute that a claim of gross negligence is sounded in tort. Therefore, the Court must once again apply the most significant relationship test to

determine whether Florida's or North Carolina's law will control Count 6, alleging gross negligence. As to the first factor, evaluating the location of the injury, the Court finds that this factor points to North Carolina. In similar fashion to the first-factor analysis for Count 5 above, because Plaintiffs are based in North Carolina and because Plaintiffs allege that Defendants "reckless[ly] disregard[ed]" their obligations and duties to Plaintiffs, it follows that any injury derived from these acts would have hurt Plaintiffs at the location of their business - North Carolina.

As to the second factor, evaluating where the conduct causing the injury occurred, the Court finds that this factor points to Florida. That is, because Defendants are based in Naples, Florida, it follows that any conduct committed by Defendants that caused this alleged injury to Plaintiffs would likely have occurred at their business location. With regard to the third factor, evaluating where the parties' respective places of business are located, the Court finds that this factor is inconclusive because the parties are based out of separate states. For the fourth and final factor, evaluating where a relationship, if any, between the parties is centered, the Court finds that this factor points to North Carolina. As noted above, two of the Defendants are ex-employees of the Plaintiffs and one of the Defendants is a company founded and operated by those two ex-employees. Consequently, a relationship, if any, between the parties would likely be located in North Carolina.

Because two factors point to North Carolina and one factor points to Florida, the Court finds that at this stage of the litigation, it appears that North Carolina law would control Count 6, alleging gross negligence. As with each of the previous counts, the Court must evaluate the factual sufficiency of Count 6. In order to state a claim for gross negligence

under North Carolina law, Plaintiffs must not only allege each of the common law elements of negligence, but also that Defendants conduct was "willful, wanton, or done with reckless indifference." *Surrett v. Consol. Metco, Inc.*, 1:11CV106, 2012 WL 2568144 at *9 (W.D.N.C. July 2, 2012) (citing *Sawyer v. Food Lion, Inc.,* 144 N.C.App. 398, 403, 549 S.E.2d 867 (2001)).

Yet again, Plaintiffs begin their allegations under Count 6 by "re-alleg[ing] and incorporat[ing]" their fact section – paragraphs 1 through 70. (Doc. #37 at 13).  And in similar fashion to Count 5, beyond this initial paragraph, Plaintiffs provide six additional paragraphs comprised of three containing substantive allegations and three generally alleging and asking for compensatory and punitive damages.  Plaintiffs' three substantive paragraphs under Count 6, state in full:

> 117.  The Defendants' acts and omissions constitute gross negligence.
>
> 118.  Defendants' misrepresentations, acts, and/or omissions were aggravated, outrageous, willful, wanton and in reckless disregard for the Defendants' obligations and duties of care.
>
> 119.  Defendants knew that their improper use and disclosure of the ELI/GSC Materials would likely result in harm to [Plaintiffs]. Nevertheless, Defendants consciously disregarded this risk and used and disclosed some or all of the ELI/GSC Materials.

(Doc. #37 at 13).

It is clear that Count 6 of Plaintiffs' Second Amended Complaint is devoid of sufficient factual specificity to reach facial plausibility.  Plaintiffs achieve facial plausibility by pleading "factual content that allows the court to draw the reasonable inference that [Defendants are] liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678.  But here, Plaintiffs fail to provide any factual allegations as to what misrepresentations, acts, and/or

omissions Defendants committed.   Moreover, Plaintiffs also fail to specify how Defendants allegedly disclosed the "ELI/GSC Materials."  Without providing any factual matter that can be accepted as true, Count 6 of Plaintiffs' Second Amended Complaint is rife with nothing more than "unadorned, the-defendant-unlawfully-harmed-me accusation[s]."[2] *Id.*  Consequently, Count 6 of Plaintiffs' Second Amended Complaint must be dismissed.

### F.  Count 8 – Trademark Infringement

Unlike the previous counts discussed above, a claim for trademark infringement is governed by Federal law.  *See* 15 U.S.C. §§ 1114, 1125.   As such, the Court need not conduct the choice-of-law analysis for Count 8, alleging trademark infringement. But as with each of the previous counts above, the Court must evaluate the factual sufficiency of Count 6. In order to sustain an action for trademark infringement under the Lanham Act (15 U.S.C. §§ 1114, 1125), Plaintiffs must demonstrate that they "had prior rights to the marks at issue and that the [Defendants] employed marks that were similar enough to [Plaintiffs'] to create a likelihood of confusion."  *Knights Armament Co. v. Optical Sys. Tech., Inc.*, 568 F. Supp. 2d 1369, 1375 (M.D. Fla. 2008) (citing *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.,* 106 F.3d 355, 358 (11th Cir.1997), *modified,* 122 F.3d 1379 (11th Cir.1997)).

Similar to each preceding count, Count 8 begins by "re-alleg[ing] and incorporat[ing]" the entire fact section of Plaintiffs' Second Amended Complaint – paragraphs 1 through 70. (Doc. #37 at 15).  Beyond this initial incorporation clause, Count

---

[2] The Court does "not pass on whether there are sufficient factual predicates in the large fact section prior to the substantive counts that would state a claim with the required particularity." *Wagner,* 464 F.3d at 1278 n.3. But rather, the Court notes that such sufficient factual predicates are notably absent from Plaintiffs' substantive Count 6 without considering the shotgun incorporation clause.

8 is comprised of five additional substantive paragraphs and two additional paragraphs generally seeking damages and injunctive relief.   The five substantive paragraphs state in full:

> 134.   [Defendant] Coding Leader has infringed on [Plaintiff] AAH's registered service marks by publishing the marks in various places including, but not limited to, on its website at www.codingleader.com.   Its unauthorized use of the registered service marks has actually or has had the capacity to cause confusion or mistake, or to deceive as to the affiliation, connection, or association of [Defendant] Coding Leader's products, or to [Plaintiff] AAH's endorsement or approval thereof.
>
> 135. [Defendant] Coding Leader's unauthorized use of AAH's service marks in commerce has been and will continue to be material and likely to influence consumers' purchasing decisions.
>
> 136.   On information and belief, [Defendant] Coding Leader's use of [Plaintiff] AAH's service marks was made knowingly, intentionally, and in bad faith.
>
> 137.   [Defendant] Coding Leader's conduct constitutes trademark infringement in violation of the Lanham Act.
>
> 138. [Defendant] Coding Leader's conduct, including as described above, constitutes trademark infringement in violation of 15 U.S.C. § 1114 and/or § 1125.

(Doc. #37 at 15).

In addition to these five substantive paragraphs, Plaintiff AAH also attached an outside document – a copy of its service mark registrations from the U.S. Patent Office – to its Second Amended Complaint.  (*See* Doc. #37, Ex. 1).  However, as illustrated above, this outside document is not referenced in the substantive part of Count 8.  Nevertheless, the Court finds that Count 8 of Plaintiffs' Second Amended Complaint provides enough factual specificity to state a claim for trademark infringement upon which relief can be granted.

While Plaintiffs failed to specifically reference the attached, outside document (Doc. #37, Ex. 1) in their substantive Count 8, Plaintiffs did reference their "registered service marks."  When the exhibit is considered[3] in conjunction with the "registered service marks" statement, it is apparent what registered service marks Plaintiffs are referring to.  In addition, Plaintiffs also provide the Court with an explicit factual predicate as to at least one location where Defendants allegedly infringed on their service marks.  Consequently, if the well-plead facts are accepted as true, it leads to the plausible inference that Defendants infringed on Plaintiffs registered service marks specified in the attached, outside document by placing those service marks on their website, www.codingleader.com, which caused or had the capacity to cause consumers confusion as to whether Plaintiffs endorsed or were affiliated with Defendants.

Based on the above analysis, Defendants' Motion to Dismiss is denied with regard to Count 8, alleging trademark infringement.

Accordingly, it is now

**ORDERED:**

Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint (Doc. #43) is **GRANTED in part** and **DENIED in part**.

1. Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint is **GRANTED** with regard to Counts 1, 2, 3, 5, and 6.

---

[3] "The Court may consider the attachments to the Complaint for the purposes of a Motion to Dismiss." *Munger v. Infinity Ins. Co.,* 8:14-CV-914-T-33MAP, 2014 WL 2778733 at *3 (M.D. Fla. June 18, 2014) (citing *FSC Franchise Co., LLC v. Express Corporate Apparel, LLC,* 8:09–cv–454–T–23TGW, 2009 WL 3200656 at *1 n. 1 (M.D.Fla. Oct.2, 2009)).

2. As such, Counts 1, 2, 3, 5, and 6 of Plaintiffs' Second Amended Complaint are **DISMISSED WITHOUT PREJUDICE.**

3. Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint is **DENIED** with regard to Count 8.

**DONE** and **ORDERED** in Fort Myers, Florida this 11th day of September, 2014.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record