UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ELI RESEARCH, LLC and AMERICAN
ACADEMY HOLDINGS,

    Plaintiffs,

v.                                                    Case No: 2:13-cv-695-FtM-38CM

MUST HAVE INFO INC., SAMANTHA
SALDUKAS and LACY GASKINS,

    Defendants.
_____/

## ORDER[1]

This matter comes before the Court on Defendants' Supplemental Motion to Dismiss as to Counts 4 and 7 (Doc. #67) filed on October 14, 2014. Plaintiffs filed a Response in Opposition (Doc. #69) on October 21, 2014. Thus, the Motion is ripe for review.

## Background[2]

Plaintiffs are a research and information company engaged in the business of publishing coding newsletters for use by hospitals, physicians, and health care providers, and its affiliate. (Doc. #37 at 2, 6). Defendants are former employees of Plaintiff ELI Research, who now operate their own research and information company engaged in

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other Web sites, this court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

[2] The factual background provided in this Order comes from the Court's original Order on Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint (Doc. #61).

publishing medical coding newsletters. (Doc. #37 at 6-8). In 2002, Plaintiff ELI Research hired Defendant Samantha Saldukas to serve as President of one of its subsidiaries, The Coding Institute, which published coding newsletters, among others, titled "Cardiology Coding Alert" and "Family Practice Coding Alert." (Doc. #37 at 7). Three years later, in 2005, Plaintiff ELI Research hired Defendant Lacy Gaskins to serve as the Events Manager for The Coding Institute. (Doc. #37 at 7).

Because Defendants' employment with Plaintiff ELI Research required them to become intimately familiar with Plaintiff ELI Research's methodologies, materials, databases, and information crucial to its business, both Defendants were required to sign employment agreements. (Doc. #37 at 6-7). Defendant Samantha Salduka's employment agreement entailed confidentiality and non-compete agreements. (Doc. #37 at 6). Defendant Lacy Gaskin's employment agreement contained non-compete, confidentiality, and non-solicitation agreements. (Doc. #37 at 6). According to Plaintiff ELI Research, these employment agreements bound Defendants not to possess, not to disseminate, and not to use the methodologies, materials, databases or information crucial to Plaintiffs' business. (Doc. #37 at 6-7).

After ending her employment relationship with Plaintiff ELI Research, Defendant Samantha Saldukas founded her own research and information company, Coding Leader, which publishes its own medical coding newsletters. (Doc. #37 at 8). Defendant Lacy Gaskin also terminated her employment relationship with Plaintiff ELI Research and joined Defendant Samantha Saldukas at Coding Leader, serving as its Vice President. (Doc. #37 at 8). Among the various publications that Defendant Coding Leader produces,

Plaintiff ELI Research takes issue with two: "Cardiology Coding Advisor" and "Family Practice Coding Advisor."  (Doc. #37 at 8).

Plaintiff ELI Research avers that in producing Cardiology Coding Advisor and Family Practice Coding Advisor, Defendants "used part or all of [Plaintiff ELI Research's] materials, databases, or other information" in their work for Defendant Coding Leader. (Doc. #37 at 8).  Specifically, Plaintiff ELI Research avers Defendants used part or all of its style guides, editorial manuals, subscriber lists, marketing plans and tactics, renewal dates, subscriber counts, cancelled subscriber lists, renewal rates, source relationships, source databases, consulting editor contact relationships, consulting editor information, reader surveys, customer service protocol, company financial information, and profitability reports.  (Doc. #37 at 4).  Furthermore, Plaintiff ELI Research's affiliate, American Academy Holdings ("AAH"), recently joined this action, asserting that in addition to the above transgressions, Defendants infringed on Plaintiff AAH's registered service marks in various locations, including on Defendants' website.  (Doc. #37 at 15).

Based on Defendants' alleged misuse and misrepresentation of Plaintiffs' materials and information, Plaintiffs filed the instant action, asserting eight counts, including civil conspiracy (Count 1), misappropriation of trade secrets (Count 2), unfair and deceptive trade practices (Count 3), conversion (Count 4), negligence (Count 5), gross negligence (Count 6), breach of contract (Count 7), and trademark infringement (Count 8).  (*See* Doc. #37 at 9-15).  Defendants responded by filing a Motion to Dismiss Plaintiffs' Second Amended Complaint (Doc. #43), pursuant to Federal Rule of Civil Procedure 12(b)(6), for Plaintiffs' failure to state a claim for which relief can be granted. (*See* Doc. #43).  The Court ruled on Defendants' Motion by granting it as to Counts 1, 2,

3, 5, and 6, and denying it as to Count 8.  (Doc. #61).  Thereafter, Defendants filed a Motion for Reconsideration, contending that the Court failed to address Defendants' argument regarding Counts 4 and 7 in their Motion to Dismiss.  (Doc. #62).  The Court denied Defendants' Motion, but granted Defendants leave to file a Supplemental Motion to Dismiss as to Counts 4 and 7.  (Doc. #65). Defendants now file the instant Supplemental Motion, seeking dismissal of Counts 4 and 7 of Plaintiffs' Second Amended Complaint for failure to state a claim upon which relief can be granted.  (Doc. #67).

## Legal Standard

In deciding a Rule 12(b)(6) motion to dismiss, the Court limits its consideration to well-pleaded factual allegations, documents central to, or referenced in, the complaint, and matters judicially noticed. *La Grasta v. First Union Sec., Inc.,* 358 F.3d 840, 845 (11th Cir.2004). The Court must accept all factual allegations in Plaintiff's Complaint as true and take them in the light most favorable to the plaintiff. *Pielage v. McConnell,* 516 F.3d 1282, 1284 (11th Cir.2008). Conclusory allegations, however, are not entitled to a presumption of truth. *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (discussing a Rule 12(b)(6) dismissal); *Marsh v. Butler County, Ala.,* 268 F.3d 1014, 1036 n. 16 (11th Cir.2001).

The Court employs the *Twombly–Iqbal* plausibility standard when reviewing a complaint subject to a motion to dismiss. *Randall v. Scott,* 610 F.3d 701, 708, n. 2 (11th Cir.2010). A claim is plausible if the plaintiff alleges facts that "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqba l,* 556 U.S. at 678. The plausibility standard requires that a plaintiff allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" that supports the

plaintiff's claim. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *Marsh,* 268 F.3d at 1036 n. 16. Thus, "the-defendant-unlawfully harmed me accusation" is insufficient. *Iqbal,* 556 U.S. 662, 677, 129 S.Ct. 1937, 173 L.Ed.2d 868. "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal modifications omitted). Further, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986).

## Discussion

Defendants bring this Supplemental Motion, contending that Counts 4 and 7 of Plaintiffs' Second Amended Complaint should be dismissed for failing to provide the necessary factual detail to satisfy the plausibility standard. (Doc. #67). In sum, Defendants assert that Counts 4 and 7 of Plaintiffs' Second Amended Complaint are "riddled with bare assertions and speculations, without any facts to support such claims." (Doc. #67 at 4, 9-10). In response, Plaintiffs assert that their Second Amended Complaint contains enough factual detail to satisfy the plausibility standard. (*See* Doc. #69).

Because the Court is sitting in diversity, before analyzing the factual sufficiency of each count, the Court must again conduct a conflict-of-laws analysis. Federal courts sitting in diversity apply the conflict-of-laws rules of the forum state. *Grupo Televisa, S.A. v. Telemundo Communications Group, Inc.,* 485 F.3d 1233, 1240 (11th Cir.2007) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)). First, the Court must characterize the legal issue, such as whether it is a contract, tort, or property issue. *Grupo Televisa,* 485 F.3d at 1240. After characterizing the legal issue, the Court then determines the choice-of-law rule that the forum state applies to that

particular type of issue. *Id.* (citing *Acme Circus Operating Co., Inc. v. Kuperstock,* 711 F.2d 1538, 1540 (11th Cir.1983)).

In Florida, courts resolve conflict-of-laws disputes according to the "most significant relationship" test as outlined in the Restatement (Second) of Conflict of Laws. *Grupo Televisa,* 485 F.3d at 1240 (citing *Bishop v. Florida Specialty Paint Co.,* 389 So.2d 999, 1001 (Fla.1980)). Courts consider the following factors when determining the most significant relationship: (a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (d) the place where the relationship, if any, between the parties is centered. *McMahan v. Barker,* No. 6:06–cv–248–Orl–28KRS, 2008 WL 68595 at *5 (M.D.Fla. Jan. 4, 2008) (citing Restatement (Second) Conflict of Law § 145 (1971) ("Restatement")).

### A. Count 4 – Conversion

As noted above, when conducting a conflict-of-law analysis, the Court must first characterize the legal issue. Both Florida and North Carolina courts agree that an action for conversion is grounded in tort. *See Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC,* 723 S.E.2d 744, 747 (N.C. 2012) ("This Court has stated that the tort of conversion is . . . .") (internal quotations and citations omitted); *Am. Int'l Land Corp. v. Hanna,* 323 So. 2d 567, 569 (Fla. 1975) ("[T]he independent tort of . . . conversion of the property."). Therefore, the "most significant relationship" test specified above governs Count 4's choice-of-law analysis, determining whether Florida or North Carolina law controls.[3]

---

[3] Because neither Plaintiffs nor Defendants provide the Court with any factual details to assist the Court's choice-of-law analysis beyond those originally provided in support and defense of Defendants' Motion to

6

Under the "most significant relationship test," the first factor that the Court looks to is the location where the injury occurred.  Here, Plaintiffs are based out of and conduct business from the state of North Carolina.  Because Plaintiffs make no specific reference to injuries, whether in Florida or North Carolina, it logically follows that any injury that Plaintiffs would have suffered would have been at their place of business in North Carolina.  As such, the Court finds that the first factor points to North Carolina law controlling.  The second factor of the "most significant relationship" test asks the Court to identify the location where the conduct that caused the injury occurred.  In contrast to the first factor, Defendants are based out of and conduct business from the state of Florida.  Therefore, in similar fashion, because Plaintiffs did not explicitly mention a specific location where the harms occurred, it logically follows that any acts allegedly committed by Defendants that would have caused Plaintiffs' injury would have occurred from their business location in Florida.  Consequently, the Court finds that the second factor points to Florida law controlling.

The third factor of the "most significant relationship" test asks the Court to identify the place of incorporation and place of business of the parties.  As specified above, Plaintiffs are based out of North Carolina, while Defendants are based out of Florida.  As such, the Court finds that the third factor fails to provide any indication of whether North Carolina or Florida law controls Count 4. The fourth and final factor of the "most significant relationship" test asks the Court to identify where a relationship, if any, between the parties would be centered.  As noted in the facts section above, this action was brought against three defendants.  Of the three Defendants, two Defendants are ex-employees of

---

Dismiss Plaintiff's Second Amended Complaint, the Court adopts its original choice-of-law analysis from its Order on Defendants' original Motion to Dismiss ([Doc. #61](Doc. #61)) for this Supplemental Motion.

the Plaintiffs, while the third Defendant is a corporation founded and operated by those two ex-employees. Therefore, a relationship, if any, between the parties would likely be centered at Plaintiffs' place of business located in North Carolina, which points to North Carolina law controlling.

Based on the above analysis, indicating that two of the four factors point to North Carolina while only one factor points to Florida, the Court finds that, at this stage of the litigation, North Carolina law governs Count 4, alleging conversion. The Court's analysis, however, does not end here. Rather, the Court must now evaluate the factual sufficiency of Count 4 to determine whether it meets the pleading standards elicited by the Supreme Court in *Iqbal*, 556 U.S. 662, 129 S.Ct. 1937.

North Carolina law provides that the "tort of conversion is well defined as 'an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights.'" *Variety Wholesalers, Inc.*, 723 S.E.2d at 747 (quoting *Peed v. Burleson's, Inc.,* 94 S.E.2d 351, 353 (N.C. 1956)). Accordingly, conversion has two elements: (1) ownership by the plaintiff and (2) conversion by the defendant. *TSC Research, LLC v. Bayer Chemicals Corp.*, 552 F.Supp.2d 534, 542 (M.D.N.C. 2008) (citing *Lake Mary Ltd. Partnership v. Johnston,* 551 S.E.2d 546, 552 (N.C. Ct. App. 2001)). But when the defendants receive the subject of the alleged conversion pursuant to a contractual agreement, two additional elements are necessary: a demand by the plaintiff and a refusal by the defendant. *Id.* (citing *Hoch v. Young,* 305 S.E.2d 201, 203 (N.C. Ct. App. 1983)).

Here, it is questionable whether Plaintiffs plead sufficient details to plausibly assert that they made a demand on Defendants for the return of their property that would satisfy

8

the necessary elements under North Carolina law.  In the substantive portion of Count 4, Plaintiffs fail to provide a single allegation that they demanded return of their converted property.  (Doc. #37 at 12).  In fact, under Count 4, Plaintiffs fail to allege that they made any contact with Defendants regarding Defendants' use of their "confidential, private, secret business information." (Doc. #37 at 12).  Plaintiffs attempt to correct this deficiency by directing the Court's attention to two paragraphs contained in their facts section.  Those two paragraphs allege that Plaintiffs "demanded that [] Defendants cease using, disclosing, or disseminating the ELI/GSC Materials immediately" (Doc. #37 at 8, ¶ 64) and that "Defendants [] failed to cease and desist their illegal conduct" (Doc. #37 at 8, ¶ 65).  But notably absent is any allegation of an explicit demand on Defendants to return the converted property.

Regardless of whether the Court accepts Plaintiffs' argument and finds that Plaintiffs' allegations qualify as the required demand, Plaintiffs' conversion claim fails for an additional reason:  "only tangible property is subject to conversion under North Carolina law."  *TSC Research, LLC*, 552 F.Supp.2d at 542.  Similar to the facts of *TSC Research, LLC*, Plaintiffs here "commingle[] tangible and intangible property by asserting that Defendants acquired 'proprietary technical and business information,' some, but not all, of which was memorialized in document form."  *Id.*  But such allegations fail to state a claim upon which relief can be granted because the Court and Defendants are unable "to discern which part of Plaintiff[s'] property was actually subject to conversion, that is, capable of being returned upon demand."  *Id.*  Consequently, Plaintiffs' Count 4 must be dismissed.

### B. Count 7 – Breach of Contract

When dealing with choice-of-law issues related to a contractual agreement, Florida's choice-of-law rules apply the doctrine of *lex loci contractus.* *Prime Ins. Syndicate, Inc. v. B.J. Handley Trucking, Inc.*, 363 F.3d 1089, 1091 (11th Cir. 2004) (citing *Fioretti v. Mass. Gen. Life Ins. Co.,* 53 F.3d 1228, 1236 (11th Cir. 1995)). Under this doctrine, "'the laws of the jurisdiction where the contract was executed govern[] interpretation of the substantive issues regarding the contract.'" *Id.* at 1091 n.1 (quoting *Lumbermens Mut. Cas. Co. v. August*, 530 So. 2d 293, 295 (Fla. 1988)).[4] In the Second Amended Complaint, Plaintiffs fail to explicitly allege where the contracts at issue were executed. Plaintiffs do, however, allege that the contracts were entered into at the time Defendants Saldukas and Gaskins began working for Plaintiffs in North Carolina, and also allege that the contracts at issue are "subject to and governed by the law of North Carolina." (Doc. #37 at 6, ¶¶ 48-51). Defendants provide no argument in their Supplemental Motion to dispute these allegations, and in fact address Plaintiffs' breach of contract claim under North Carolina law. Therefore, the Court finds that, at this stage in the litigation, Plaintiffs' Count 7, alleging breach of contract, is governed by North Carolina law.

North Carolina law provides that in order to state a breach of contract, the plaintiff must allege (1) the existence of a valid contract and (2) a breach of that contract by the defendant. *T.W.T. Distrib., Inc. v. Johnson Products Co., 966 F.Supp.2d 576, 580 (W.D.N.C. 2013)* (citing *Parker v. Glosson,* 641 S.E.2d 735, 737 (N.C. Ct. App. 2007)). Here, a review of the Second Amended Complaint illustrates that Plaintiffs have plausibly

---

[4] Because the Parties fail to argue that a "statute modifies or abrogates [this] choice-of-law rule," *lex loci contractus* applies for the purposes of this Order. *Prime Ins. Syndicate, Inc.*, 363 F.3d at 1091.

plead a breach of contract claim. Under Count 7, Plaintiffs specifically allege Defendants Saldukas and Gaskins entered into contractual agreements that included non-disclosure provisions for the ELI/GSC Materials. (Doc. #37 at 14, ¶ 127). Moreover, Plaintiffs further allege that Defendants Saldukas and Gaskins breached these contractual agreements by disseminating, using, and misappropriating the ELI/GSC Materials in whole or in part. (Doc. #37 at 14, ¶ 128).

If these were the only factual allegations contained in the Second Amended Complaint related to the breach of contract claim, the Court might agree with Defendants' position. But that is not the case. Instead, Plaintiffs also provide specific allegations detailing 1) the date the respective contracts were executed (Doc. #37 at 6, ¶¶ 48-49); 2) the exact ELI/GSC Materials that Defendants Saldukas and Gaskins were prevented from disclosing (Doc. #37 at 4, ¶ 29); 3) certain "express terms" of the contracts at issue (Doc. #37 at 6-7, ¶ 53); and 4) the exact newsletters that they believe Defendants created by improperly utilizing and disclosing the ELI/GSC materials (Doc. #37 at 8, ¶ 60). When the Court takes these allegations as true, Plaintiffs' Count 7, alleging breach of contract, has facial plausibility, allowing the Court to draw the reasonable inference that Defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937. Therefore, as to Count 7, Defendants' Supplemental Motion must be denied.

### C. Punitive Damages

Defendants conclude their Supplemental Motion by once again asserting an argument that punitive damages are "inappropriate" in this action. (Doc. #67 at 12). Without ruling in any way on Defendants' argument, the Court directs Defendants' attention to the Court's October 6, 2014, Order (Doc. #65). In that Order, the Court

explicitly stated that because of the potential for choice-of-law issues, any Motion to Strike Punitive Damages is premature at this stage in the litigation.  ([Doc. #65 at 6](#)).  In doing so, the Court granted Defendants leave to file a renewed Motion to Strike after discovery has been completed.  ([Doc. #65 at 6](#)).  A review of the current Case Management and Scheduling Order shows that the discovery deadline is on March 3, 2015.  ([Doc. #32 at 1](#)).  Therefore, after March 3, 2015, if appropriate, Defendants may renew their Motion to Strike Plaintiffs' Punitive Damages.  But until then, the Court will not entertain any arguments regarding punitive damages.

Accordingly, it is now

**ORDERED:**

Defendants' Supplemental Motion to Dismiss as to Counts 4 and 7 ([Doc. #67](#)) is **GRANTED in part** and **DENIED in part**.

1. As to Count 4, Defendants' Supplemental Motion is **GRANTED**.  Thus, Count 4 is **DISMISSED WITHOUT PREJUDICE.**

2. As to Count 7, Defendants' Supplemental Motion is **DENIED**.

**DONE** and **ORDERED** in Fort Myers, Florida, this 5th day of November, 2014.

*[Signature]*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record