UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ELI RESEARCH, LLC and AMERICAN
ACADEMY HOLDINGS,

    Plaintiffs,

v.                                                                     Case No: 2:13-cv-695-FtM-38CM

MUST HAVE INFO INC., SAMANTHA
SALDUKAS and LACY GASKINS,

    Defendants.
_____/

## ORDER[1]

This matter comes before the Court on the Plaintiffs, Eli Research, LLC and American Academy Holdings, LLC's Motion to Strike Expert Report and Exclude Expert Testimony of Dr. David Nelson (Doc. #128) filed on July 2, 2015. The Defendants Samantha Saldukas and Lacy Gaskins filed their Response in Opposition (Doc. #145) on July 20, 2015. The Motion is fully briefed and ripe for the Court's review.

The legal principles governing the admissibility of expert testimony are well settled. Marco Island Cable, Inc. v. Comcast Cablevision of the South, Inc., No. 2:04-cv-26, 2006 WL 1722342, at *1-2 (M.D. Fla. June 22, 2006). Federal Rule of Evidence 702 is the starting point, and provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue, a witness qualified as an expert by knowledge,

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or websites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites. Likewise, the Court has no agreements with any of these third parties or their websites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

> skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the case.

In Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999) and Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), the Supreme Court held that the trial court had a "gatekeeper" function designed to ensure that any and all expert testimony is both relevant and reliable. The importance of this gatekeeping function "cannot be overstated." Royal Marco Point 1 Condominium Ass'n. v. QBE Ins. Corp., 2011 WL 47056 *3 (M.D. Fla. 2011) (citing U.S. v. Frazier, 387 F.3d 1244, 1260 (11th Cir.2004) (*en banc*)).

In determining the admissibility of expert testimony under Rule 702, the Court applies a "rigorous" three-part inquiry. Frazier, 387 F.3d at 1260. "Expert testimony is admissible if (1) the expert is qualified to testify on the topic at issue, (2) the methodology used by the expert is sufficiently reliable, and (3) the testimony will assist the trier of fact." Club Car, Inc. V. Club Car (Quebec) Import, Inc., 362 F.3d 775, 780 (11th Cir.2004). *See also* U.S. v. Hansen, 262 F.3d 1217, 1234 (11th Cir.2001). "The burden of laying a proper foundation for the admissibility of an expert's testimony is on the party offering the expert, and the admissibility must be shown by a preponderance of the evidence." Hall v. United Ins. Co. Of Am., 367 F.3d 1255, 1261 (11th Cir.2004). *See also* McCorvey v. Baxter Healthcare Corp., 298 F.3d 1253, 1256 (11th Cir.2002). The admission of expert testimony is a matter within the discretion of the district court, which is accorded considerable leeway in making its determination. Cook ex rel. Tessler v. Sheriff of Monroe County, 402 F.3d 1092, 1103 (11th Cir.2005); Frazier, 387 F.3d at 1258.

The first requirement for the admissibility of expert testimony is that the expert is qualified to testify competently regarding the matters he or she intends to address. Hansen, 262 F.3d at 1234; City of Tuscaloosa v. Harcros Chems., Inc., 158 F.3d 548, 563 (11th Cir.1998). Rule 702 permits a person to qualify as an expert based upon knowledge, skill, experience, training, or education. Frazier, 387 F.3d at 1260-61. Reliability is different than believability or persuasiveness, which remains an issue for the trier of fact. Rink v. Cheminova, Inc., 400 F.3d 1286, 1293 n. 7 (11th Cir.2005).

The second requirement, discrete and independent from the witness' qualifications, is reliability. Frazier, 387 F.3d at 1261. While the criteria used to evaluate the reliability of nonscientific, experience-based testimony may vary from case to case, the district court must evaluate the reliability of the testimony before allowing its admission at trial. Id. at 1261-62.

The third requirement for admissibility is that the expert testimony must assist the trier of fact. Thus, "expert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person.... Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." Id. at 1262-63.

Finally, expert testimony which satisfies these three requirements may nonetheless be excluded under Rule 403 if the probative value of the expert testimony is substantially outweighed by its potential to confuse or mislead the jury, or if it is cumulative or needlessly time consuming. Id. at 1263. Additionally, an expert witness may not offer a legal conclusion, but Rule 704(a) provides that an opinion or inference is not

objectionable because it embraces an ultimate issue to be decided by the trier of fact. [Cook, 402 F.3d at 1112-13 n.8](#).

Dr. David Nelson, is Professor Emeritus of Journalism at Northwestern University. ([Doc. #128-1](#)).  In Addition, to his position at Northwestern, Dr. Nelson has also worked for Time Magazine, the Miami Herald, and has experience in the newsletter publishing business. ([Doc. #128-1](#)).  The Defendants seek to introduce Dr. Nelson's opinions regarding: (1) whether subscription print newsletters are in decline because of the advent and acceptance of web-based subscription newsletters and other online information portals; (2) whether Eli's Editorial Style Guide and Editorial Manual, contain unique content which would amount to confidential trade secrets or if that information is known throughout the industry and taught in journalism schools; (3) whether Dr. Leslie Norins' recipe for publishing newsletters is widely known and unitized in the newsletters industry; and (4) whether the form or format of subscription newsletters is of a confidential nature or rather a layout or design that can be and is utilized by others.

The Plaintiffs argue that Dr. Nelson's opinions do not satisfy the <u>Daubert</u> standards because (1) he is not qualified to make all the opinions offered; (2) his opinions are irrelevant; and (3) his opinions are unreliable.  The Defendants respond that Dr. Nelson is uniquely qualified to opine on the current state of print newsletters and whether or not Defendants violated any trade secrets by publishing their own newsletters and if such publications caused the Plaintiffs' subscriptions to decline.

### *(1) Subscription Decline*

Plaintiffs argue that newsprint decline is something that is readily observable and a matter of common sense due to the rise in digital media.  The Plaintiffs also argue that

Dr. Nelson is not qualified to testify on the decline of the print media, however, the Plaintiffs do acknowledge he is an expert in the field of journalism.

The Plaintiffs' argument lacks merit. Dr. Nelson has written articles and performed surveys on the decline of print media due to the rise of digital technologies. While the Plaintiffs contend that the last survey was performed in 1995 and is no longer valid that is a matter of weight rather than admissibility. Any deficiencies in Dr. Nelson's opinion may be challenged during cross examination and by the testimony of any rebuttal experts. Consequently, the Court finds Dr. Nelson is qualified to testify regarding the decline in print media.

### (2) *Relevance of Dr. Nelson's Opinion*

Dr. Nelson's second opinion states that Eli's Manuals and Style Guides are not unique. Dr. Nelson opines that the information in Eli's Executive Editorial Manual, Editorial Manual, and Style Guide is available to the public in schools, classes, training programs, and basic management books as well as some programs he himself has conducted. The Plaintiffs argue Dr, Nelson's opinion is unreliable arguing that Nelson's only research was to read some articles, certain books and rely on his experience as a journalist.

Dr. Nelson opined that Eli's Executive Editorial Manual, Editorial Manual, and Style Guide are broadly known and easily accessible writing guides and manuals. Dr. Nelson reviewed at least four texts before formulating the opinion that much of the material contained in Eli's Executive Editorial Manual, Editorial Manual, and Style Guide are found in other texts. Nelson's experience as a journalist and journalism professor at Northwestern for thirty (30) years, as well as working in the newsletter publishing field, is

more than sufficient to make his opinion reliable beyond the understanding of the jurors or average person reading such texts and articles on whether or not Eli's Executive Editorial Manual, Editorial Manual, and Style Guide are unique to Eli alone. (Doc. #128-1).  Thus, Dr. Nelson's may opine on these issues.

### (3) *Whether Dr. Leslie Norins' Recipe for Publishing Newsletters is Widely Known*

Plaintiffs contend that Dr. Nelson's opinion on Dr. Norins' recipe for newsletters is no more than a mere google search and therefore unreliable.  Plaintiffs claim that Dr. Nelson has never met Dr. Norins or personally heard him speak.  Plaintiffs argue any research done on Dr. Norins' Recipe is nothing more than any other person could do. Plaintiffs' argument goes to the weight of the research done by Dr. Nelson and not to the admissibility.  Dr. Nelson has thirty (30) years of experience as a journalism professor at Northwestern, and extensive work in the journalism profession including experience in the newsletter publishing field. (Doc. #128-1 at 1).  His opinion in these matters is more than the average juror or individual could obtain by reading the same articles or researching the issues themselves.  *See* Frazier, 387 F.3d at 1261.  Accordingly, his opinion will not be stricken.

### (4) *Whether the Form or Format of Subscription Newsletters is of a Confidential Nature*

The Plaintiffs argue that any testimony provided by Dr. Nelson regarding the form and format of newsletters being similar is irrelevant to this case.  Contrary to Plaintiffs' position, Dr. Nelson's opinion goes straight to the heart of the matter.  Dr. Nelson's thirty (30) years in the journalism profession and his prior experience with Time Magazine and

the Miami Herald make him eminently qualified to opine on the formatting issue. Therefore, Dr. Nelson's opinion will not be stricken.

## CONCLUSION

Based upon Dr. Nelson's experience as a professor of journalism at Northwestern and his experience in the field of journalism he is qualified to opine on all the issues presented by this case.  Therefore, the Motion to Strike his expert report and exclude his expert testimony is due to be denied.

Accordingly, it is now

**ORDERED:**

The Plaintiffs, Eli Research, LLC and American Academy Holdings, LLC's Motion to Strike Expert Report and Exclude Expert Testimony of David Nelson ([Doc. #128](Doc. #128)) is **DENIED**.

**DONE** and **ORDERED** in Fort Myers, Florida this 9th day of September, 2015.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record