UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ELI RESEARCH, LLC and AMERICAN
ACADEMY HOLDINGS,

       Plaintiffs,

v.                             Case No:  2:13-cv-695-FtM-38CM

MUST HAVE INFO INC.,
SAMANTHA SALDUKAS and LACY
GASKINS,

       Defendants.
_____/

## ORDER[1]

      This matter comes before the Court on the Defendant, Must Have Info, Inc. d/b/a

Coding Leader's Motion for Summary Judgment against American Academy Holdings,

LLC (Doc. #131) filed on July 6, 2015.  The Plaintiff, American Academy Holdings (AAH)

filed its Response in Opposition (Doc. #153) on July 21, 2015.  The Motion is fully briefed

and ripe for the Court's review.

## FACTS

      On September 27, 2013, AAH and Co-Plaintiff Eli Research, Inc. initiated this

lawsuit seeking monetary damages and injunctive relief.  The instant Motion was filed by

Defendants seeking summary judgment on Count VIII, AAH's claim for trademark

infringement under the Lanham Act.

---

[1] Disclaimer:  Documents filed in CM/ECF may contain hyperlinks to other documents or websites.  These hyperlinks are provided only for users' convenience.  Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees.  By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites.  Likewise, the Court has no agreements with any of these third parties or their websites.  The Court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

The American Academy of Professional Coders (AAPC) which does business as AAH provides education and professional certification to physician-based medical coders to elevate the standards of medical coding by providing student training, certification, ongoing education, networking, and job opportunities.  As part of its goods and services, AAH provides online learning services which include continuing education units ("CEUs"), webinars, workshops, certification exams, books, mugs, polos, and magazines to name a few. (Ex. C, ¶5; Ex. J. at 112:23-113:18). AAH does not engage in coding services. (Ex. C, ¶6). AAH and Defendants both advertise their goods and services through direct emailing campaigns to individuals in the medical coding field. (Ex. C,  ¶7).

It is undisputed that AAH holds several federally registered trademarks including a federal trademark registrations for the mark CPC as a service mark. (Ex. C, ¶9, Ex. C-1). AAH claims the CPC service marks are incontestable. (Ex. C, ¶11, Ex. C-2).  In order to be certified as a Certified Professional Coder, individuals must take and pass AAH's CPC exam. (Ex. C, ¶13).  Once an individual passes the exam, they become a Certified Professional Coder. (Ex. C, ¶15).  Individuals may then use AAH's CPC mark behind their name to indicate they have taken and passed the exam. (Ex. C, ¶16).

In order to protect its marks, AAH has in place a brand policy governing the use of its trademarks and logos. (Ex. C, ¶12, Ex. C-5). AAH's brand policy is published on AAH's public website. (Ex. C, ¶12, 17, Ex. C-5).  The AAH brand policy specifically forbids the use of AAH's marks, without attribution, in the title of individuals or entities' products or services. (Ex. C-5). The AAH brand policy further forbids the use of its marks in "any manner that implies a relationship or affiliation with, sponsorship or endorsement by AAPC." (Ex. C, ¶19, Ex. C-5).

Defendants claim that AAH does not enforce its CPC service mark but has allowed numerous others to utilize the CPC service mark without authorization. (Ex. C, pp.95-96). Chad Iverson, AAH's Vice President of Finance and Operations and AAH's Corporate Reperesentative (Iverson), testified that the only entity that AAH has pursued for infringing on the CPC service mark is the Defendants d/b/a The Coding Leader.  (Ex. C, p. 96). Defendants' website states that it teaches CPC exam tips.  Specifically, the website reads in pertinent part: "CPC Exam Secret Tips to Pass the Test – Pre-Recorded Webinar, Learn More." (Ex. C, p. AAH 20).  Defendants state that its prerecorded webinar offered students tips on how to pass the CPC exam. (Ex. C, p. 90, Lines 22-25).

AAH admits that Coding Leader's "how to pass the CPC exam" webinar actually benefits AAH. (Ex. C, page 91, Lines 5-8).  Iverson agreed that the only people that would take Coding Leader's webinar are people that are going to take AAH's CPC certification exam. In order to take the exam, individuals must pay AAH. (Ex. C, page 91, Lines 5-8; Page 41, Line 19-25).

In addition to using the CPC service mark on its website in advertising tips on how to pass the CPC exam, Defendants also used the designation CPC after the names of what they refer to as "false responders" - actors used in advertising.  The actors used the designation CPC after their names as a certification mark to advertise Coding Leaders' exam prep materials.  In reality, the false responders were not CPC certified and never took AAH's CPC exam.  Coding Leader sent out advertising using the names of four mock responders, Stephanie Johnson, Julie Richards, Gayle Adams, and Lisa Williams.  All of the mock responders used the CPC designation after their names.

On or around December 17, 2013, Iverson's wife, Sherry Iverson, received an e-mail from a mock responder, Stephanie Johnson, advertising Coding Leader's products. Sherry Iverson took the advertising material to her husband.  The Iverson's stated they were surprised by the e-mail. (Ex. C, ¶59).  Sherry Iverson is not a CPC, she is not a coder, nor is she employed by AAH.   Iverson forwarded the materials to Bevan Erickson, AAH's Vice President of Marketing.  Iverson said he did not know how the Defendants obtained his wife's e-mail without some access to AAH's database.  Sherry Iverson acknowledged that she participated in a testing program that tested a product for AAH. Sherry Iverson stated that she was confused by the e-mail because she thought the advertising came from AAPH (AAH). Ex C, ¶ 31; Ex. K, p. 33:17.

In response to the e-mail advertising sent by Coding Leader to Sherry Iverson, AAH added Count VIII, a claim for trademark infringement to the Second Amended Complaint filed on February 24, 2014.

## STANDARD OF REVIEW

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact" and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  An issue is genuine if there is sufficient evidence such that a reasonable jury could return a verdict for either party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 U.S. 2505, 91 L. Ed. 2d 202 (1986).  Similarly, an issue is material if it may affect the outcome of the suit under governing law. Id.

The moving party bears the burden of showing the absence of any genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  In deciding whether the moving party has met this initial burden, the Court

4

must review the record and all reasonable inferences drawn from the record in the light most favorable to the non-moving party. Whatley v. CNA Ins. Co., 189 F.3d 1310, 1313 (11th Cir. 1999).  Once the Court determines that the moving party has met its burden, the burden shifts and the non-moving party must present specific facts showing that there is a genuine issue for trial that precludes summary judgment.  Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, S. Ct. 1348, 89 L. Ed. 2d 538 (1986). "The evidence presented cannot consist of conclusory allegations, legal conclusions or evidence which would be inadmissible at trial." Demyan v. Sun Life Assurance Co. of Canada, 148 F. Supp. 2d 1316, 1320 (S.D. Fla. 2001) (citing Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991)).  Failure to show sufficient evidence of any essential element is fatal to the claim and the Court should grant the summary judgment.  Celotex, 477 U.S. at 322-323.  Conversely, if reasonable minds could find a genuine issue of material fact then summary judgment should be denied.  Miranda v. B & B Cash Grocery Store, Inc., 975 F.2d 1518, 1532 (11th Cir. 1992).

## DISCUSSION

Defendants argue that Coding Leader is entitled to summary judgment on AAH's cause of action for federal trademark infringement under the Lanham Act.  AAH argues Coding Leader is not entitled to judgment as a matter of law because a genuine issue of material fact as to each element exists.

Under the Lanham Act, 15 U.S.C. § 1114(1), a defendant is liable for infringement, if, without consent, he uses 'in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark' which 'is likely to cause confusion, or to cause mistake, or to deceive.' " Homes & Land Affiliates, LLC v. Homes & Loans Magazine, LLC, 598

F.Supp.2d 1248, 1258 -1259 (M.D. Fla. 2009) (quoting Frehling Enters. v. Int'l Select Group, Inc., 192 F.3d 1330, 1335 (11th Cir.1999)). In order to prevail on a claim of infringement, a plaintiff must show "that its mark is valid and ... that the defendant's use of the contested mark is likely to cause confusion." Dieter v. B & H Indus. of Sw. Fla., Inc., 880 F.2d 322, 326 (11th Cir.1989).

*(1) Whether AAH has a Valid Mark*

Defendants argue their use of the CPC certification mark for mock responders does not infringe upon AAH's service mark because AAH does not own a certification mark.  Indeed, the CPC certification mark is held by ACF.

The Lanham Act distinguishes between trademark, service mark, and certification mark. Under the Lanham Act, the term "trademark" includes any word, name, symbol, or device, or any combination thereof used by a person to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown. Homes & Land Affiliates, 598 F.Supp.2d at 1258 -59 (citing 15 U.S.C. § 1127).  "Service marks" are words or names used "to identify and distinguish the services of one person, including a unique service, from the services of others and to indicate the source of the services." Homes & Land Affiliates, 598 F.Supp.2d at 1258 -59 (citing 15 U.S.C. § 1127).  The term "certification mark" means:

> any word, name, symbol, or device, or any combination thereof --(1) used by a person other than its owner or (2) its owner has a bona fide intention to permit a person other than the owner to use in commerce and files an application to register on the principal register established by this chapter, to certify regional or other origin, material, mode of manufacture, quality, accuracy, or other characteristics of such person's goods or services or that the work or labor on

6

> the goods or services was performed by members of a union
> or other organization.

15 U.S.C. § 1127.

Defendants argue that AAH does not own a certification mark for CPC but a service mark.  In fact, the certification mark for the mark CPC is owned by American Culinary Federation (ACF).  ACF uses the CPC mark to designate a person who is a professional baker or pastry helper who has demonstrated basic knowledge and skills pertaining to professional baking and pastries as determined by a test of baking skills and knowledge as authorized by the certifier.  AAH cannot seek to enforce or protect the CPC mark used as a certification mark for the Defendants' mock responders as it does not own the CPC certification mark.  Indeed, AAH admits that it is not trying to enforce the CPC mark as a certification mark but only as a service mark.

However, it is undisputed that AAH has a registered service mark on the CPC mark.  Registration of a service mark creates a rebuttable presumption of the mark's validity and the holder's right to its exclusive use. 15 U.S.C. § 1057(b).  Thus, AAH meets the first prong because it holds a valid service mark on the CPC mark.

(2) _Whether Coding Leaders Use of the Service Mark CPC Causes Confusion_

Defendants argue the use of CPC in ads for CPC test preparation materials does not cause confusion.  AAH argues that Defendants use of the CPC mark creates confusion and AAH states it has evidence of an actual case of confusion caused by Defendants use of the CPC mark in advertising.

A determination of likelihood of confusion requires analysis of seven factors: "(1) the strength of the plaintiff's mark; (2) the similarity between the plaintiff's mark and the allegedly infringing mark; (3) the similarity between the products and services offered by

the plaintiff and defendant; (4) the similarity of the sales methods; (5) the similarity of advertising methods; (6) the defendant's intent, e.g., does the defendant hope to gain competitive advantage by associating his product with the plaintiff's established mark; and (7) actual confusion." Homes & Land Affiliates, 598 F.Supp.2d at 1258 -59 (quoting Alliance Metals, Inc., of Atlanta v. Hinely Indus., Inc., 222 F.3d 895, 907 (11th Cir.2000)). Of these factors, the most important in the Eleventh Circuit are the mark's strength and evidence of actual confusion. Id. "The court does not have to consider all of these factors in every case and in some cases, 'new' factors may merit consideration." Homes & Land Affiliates, 598 F.Supp.2d at 1258 -59 (citing Swatch Watch, S.A. v. Taxor, Inc., 785 F.2d 956, 958 (11th Cir.1986)).  The Court will now analyze the factors in turn.

### (a) Strength of AAH's Mark

AAH states the CPC mark is incontestable and should be considered as very strong.   The strength of a mark dictates the level of protection it receives. Homes & Land Affiliates, 598 F.Supp.2d at 1259 (citing John H. Harland Co. v. Clarke Checks, Inc., 711 F.2d 966, 973 (11th Cir.1983)). "'[T]he strength and distinctiveness of plaintiff's mark is a vital consideration in determining the scope of protection it should be accorded. Strong marks are widely protected, as contrasted to weak marks.' " Homes & Land Affiliates, 598 F.Supp.2d at 1259 (quoting Amstar Corp. v. Domino's Pizza, Inc., 615 F.2d 252, 259 (5th Cir.1980)). In determining the strength of a mark, the Court weighs three factors: (1) the distinctiveness of the mark; (2) whether the mark has been declared as "incontestable" under 15 U.S.C. § 1065(3); and (3) the extent of third-party use of the mark. Homes & Land Affiliates, 598 F.Supp.2d at 1259 (citing Ocean Bio–Chem, Inc. v. Turner Network Television, Inc., 741 F.Supp. 1546, 1554 (S.D.Fla.1990)).

"The distinctiveness of a mark has been characterized as 'its tendency to identify the goods sold under the mark as emanating from a particular, although possibly anonymous, source.' " Frehling Enters., 192 F.3d at 1335 (quoting McGregor–Doniger, Inc. v. Drizzle, Inc., 599 F.2d 1126, 1131 (2d Cir.1979)). "There are four categories of marks: (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary. The categories are based on the relationship between the name and the service or good it describes." Id. at 1335 (citation omitted). Generic marks "refer to a class of which the individual service is a member" and receive the least protection. Homes & Land Affiliates, 598 F.Supp.2d at 1259. "Generic terms may never be registered as trademarks under the Lanham Act." Dieter, 880 F.2d at 328. In contrast, arbitrary marks are "word[s] or phrase[s] that bear[ ] no relationship to the product" and receive the most protection. Frehling, 192 F.3d at 1335–36. Between the two ends of this spectrum lie descriptive and suggestive marks. Suggestive marks refer to a characteristic of the product but require a leap of the imagination to get from the mark to the product. AmBrit, Inc. v. Kraft, Inc., 812 F.2d 1531, 1537 n. 20 (11th Cir.1986). Descriptive marks, on the other hand, "identify a characteristic or quality of an article or service" and receive less protection than suggestive marks do. Homes & Land Affiliates, 598 F.Supp.2d at 1259 (citing Dieter, 880 F.2d at 327 (quoting Vision Ctr. v. Opticks, Inc., 596 F.2d 111, 115 (5th Cir.1979)).

When determining whether a particular mark is suggestive or descriptive, courts have used the "imagination test" and the "competitor use" test. Gulf Coast Commercial Corp. v. Gordon River Hotel Assocs., Case No. 2:05–564–FtM–33SPC, 2006 WL 1382072, at *4 (M.D. Fla. May 18, 2006). The "imagination test" asks whether a "'customer who observes the term can readily perceive the nature of plaintiff's services,

without having to exercise his imagination.' " Id. (quoting Investacorp, Inc. v. Arabian Inv. Banking Corp., 931 F.2d 1519, 1524 (11th Cir.1991)). If no imagination is needed, the term is considered merely descriptive. Id. The "competitor use" test asks "whether competitors would be likely to need the terms used in the trademark in describing their products." Homes & Land Affiliates, 598 F.Supp.2d at 1259 (citing Vision Center, 596 F.2d at 116 (citation and internal quotation omitted)).

Defendants argue the mark is descriptive and should not be considered as very strong.  AAH argues the CPC mark is at the least suggestive and should be accorded a higher level of protection.  CPC stands for "Certified Professional Coder."  The mark CPC is used to certify that an individual has passed AAH's coding examination or to advertise AAH's CPC prep courses.  To an individual in the coding field, it does not take a lot of imagination to determine the meaning of CPC.  Therefore, the CPC determination leans towards being a descriptive mark.

AAH also suggests the mark is incontestable.  For a mark to be considered incontestable, Plaintiffs would have had to file an affidavit with the U.S. Patent and Trademark Office five years after registering the CPC mark and have the mark declared incontestable. 15 U.S.C. § 1065(3).  Plaintiffs present no evidence that they have had the mark declared incontestable by the U.S. Patent and Trademark Office. As such, the Court cannot consider the mark to be incontestable for the purposes of summary judgment.

In regards to the third party use of the mark, AAH has allowed others to use the CPC mark without seeking enforcement, however, AAH contends that the third parties attributed the CPC mark to AAH.  Specifically, ACF, which registered the same CPC mark as a certification mark.  Further, under the competitor use test, competitors—like Coding

Leader— have to use the term CPC when advertising their own CPC examination prep courses.  So there is third party use of the CPC mark which tends to make the mark weaker.  Thus, the Court does not find the CPC mark to be particularly strong but somewhat weak.

### (b) *Similarity Between the Plaintiffs' Mark and the Allegedly Infringing Mark*

The similarity of the marks is "'determined by considering the overall impression created by the mark[s] as a whole rather than simply comparing individual features of the marks.' Homes & Land Affiliates, 598 F.Supp.2d at 1261-62 (citing John H. Harland Co., 711 F.2d at 975 (quoting Exxon Corp. v. Tex. Motor Exch., Inc., 628 F.2d 500, 504–05 (5th Cir.1980)). To determine the similarity of the marks, "the court compares the marks and considers the overall impressions that the marks create, including the sound, appearance, and manner in which they are used." Frehling, 192 F.3d at 1337. "[L]ikelihood of confusion cannot be predicated on dissection of a mark, that is, on only part of a mark." In re Nat'l Data Corp., 753 F.2d 1056, 1058 (Fed.Cir.1985).

Defendants use the exact same mark as AAH—the CPC mark.  As such, the similarities of the mark indicate to the Court that the use of the CPC mark is likely to cause confusion.

### (c) *Similarity Between the Products and Services Offered by Plaintiff and Defendant*

The greater the similarity between the products and services, the greater the likelihood of confusion. Homes & Land Affiliates, 598 F.Supp.2d at 1261-62 (citing John H. Harland Co., 711 F.2d at 976.  Both AAH and the Defendants' company, Coding Leader, offer training courses in coding education and prep courses for taking the CPC

examination.  Thus, the Plaintiffs and Defendants offer similar products which the Court finds would tend to lead to confusion by the respective consumers.

### (d) Similarity of the Sales Methods

This factor takes into consideration where, how, and to whom the parties' products are sold." Homes & Land Affiliates, 598 F.Supp.2d at 1263 (citing Frehling, 192 F.3d at 1339).  While "the parties' outlets and customer bases need not be identical, ... some degree of overlap should be present." ." Homes & Land Affiliates, 598 F.Supp.2d at 1263

In this instance, both Parties provide training to individuals in the medical coding field.  The Parties essentially are in direct competition with each other selling the same product and services to the same limited customer base.  This factor weighs in favor of a likelihood of causing confusion.

### (e) Similarities in Advertising

The greater the similarity in advertising campaigns the greater the likelihood of confusion." Id. (citing Ross Bicycles, Inc. v. Cycles USA, Inc., 765 F.2d 1502, 1508 (11th Cir.1985)).  Each Party advertises their products directly to coding specialists in the medical field via e-mail.  Because the advertising is particularly similar in this case, this factor weighs in favor of causing a likelihood of confusion.

### (f) The Defendants' Intent

If it can be shown that a defendant adopted a plaintiff's mark with the intention of deriving a benefit from the plaintiff's business reputation, this fact alone may be enough to justify the inference that there is confusing similarity." Homes & Land Affiliates, 598 F.Supp.2d at 1266 (citing Frehling, 192 F.3d at 1340).  AAH argues that Defendants used the CPC mark to gain benefit from AAH's reputation.  Therefore, AAH claims  Defendants

use of the CPC mark causes confusion.  Defendants respond that their use of the CPC mark is "descriptive fair use" and not a violation of the mark.

In descriptive fair use the defendant utilizes plaintiff's mark not to identify plaintiff's product, but merely to describe his own. Ford Motor Co. v. O.E. Wheel Distributors, LLC, 868 F.Supp.2d 1350, 1369 (M.D. Fla. 2012); *See, e.g.,* 4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 23:11 (4th ed. 2008).  "A fair-use defense is established if a defendant proves that its use is '(1) other than as a mark, (2) in a descriptive sense, and (3) in good faith.'" Croft v. Lewis, 2011 WL 3269589, *2 (M.D. Fla. July 29, 2011) (citing Int'l Stamp Art, Inc. v. U.S. Postal Service, 456 F.3d 1270, 1274 (11th Cir. 2006)(quoting EMI Catalogue P'ship v. Hill, Holiday, Conners, & Cosmopulos, Inc.*, 228* F.3d 56, 64 (2d Cir. 2000)). "The 'fair-use' defense, in essence, forbids a trademark registrant to appropriate a descriptive term for [its] exclusive use and so prevent others from accurately describing a characteristic of their goods." Soweco, Inc. v. Shell Oil Co., 617 F.2d 1178, 1185 (5th Cir.1980). The determination of whether a term is used in a trademark or a descriptive sense and the determination that a defendant's use was in good faith are questions of fact. Packman v. Chicago Tribune Co., 267 F.3d 628, 637 (7th Cir.2001).  "Nevertheless, these issues may be resolved on summary judgment 'if the evidence is so one-sided that there can be no doubt about how the question should be answered.'" Id. (quoting Door Sys., Inc. v. Pro–Line Door Sys., Inc., 83 F.3d 169, 171 (7th Cir.1996)).

AAH argues that Defendants acted in bad faith when they published the CPC mark on Coding Leaders' website.  AAH argues Defendants intended for the consumer to rely on the strength of AAH's reputation when viewing Defendants' website offering CPC prep

courses.  Defendants argue they never claimed to be associated with AAH or AAPC on their website.

In order for the issue to be decided on summary judgment under the fair use doctrine, the evidence must be so one-sided there can be no doubt about the use of the mark.  Defendants' arguments go to their denials and assertions that they did not use the CPC mark in bad faith.  However, Defendants mere denials are insufficient and there remains a genuine issue of material fact as to the intent of Defendants in the use of the CPC mark.

### (g) *Actual Confusion*

AAH says the Defendants' use of the CPC mark on Coding Leader's website causes actual confusion.  As grounds AAH notes that Sherry Iverson, the wife of one of its officers, received an e-mail advertising CPC prep courses from the Defendants.  Sherry Iverson is not a CPC, she is not a coder, nor is she employed by AAH. Sherry Iverson states she was confused and showed the e-mail to her husband, Chad Iverson.  Chad Iverson then forwarded the materials on to Bevan Erickson who was AAH's Vice President of Marketing at that time.  Sherry Iverson stated that she was confused by the e-mail because she thought the advertising came from AAPH (AAH). (Ex C, ¶ 31; Ex. K, p. 33:17).

Proof of actual confusion is not necessary to prove likelihood of confusion, Frehling, 192 F.3d at 1340, but it is "[t]he most persuasive evidence in assessing the likelihood of confusion," Alliance Metals, Inc., 222 F.3d at 907. "Actual confusion by a few customers is the best evidence of likelihood of confusion by many customers." Homes & Land Affiliates, 598 F.Supp.2d at 1266 (citing Freedom Sav. & Loan Ass'n v. Way, 757

F.2d 1176, 1185 (11th Cir.1985)). Actual confusion may be shown in a variety of ways, including "inquiries regarding possible affiliations between the parties," "attempts to purchase goods or services actually offered by the other party," and "misdirected correspondence such as bills or letters." Homes & Land Affiliates, 598 F.Supp.2d at 1266 (citing Popular Bank of Fla. v. Banco Popular de Puerto Rico, 9 F.Supp.2d 1347, 1360 (S.D.Fla.1998)).

When examining the likelihood of confusion in the marketplace, a court examines only those in the relevant consumer group, not the general public. Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc., 508 F.3d 641, 651–52 (11th Cir.2007). "A potential customer is one who might someday purchase this kind of product or service and pays attention to brands in that market." 4 J. Thomas McCarthy, McCarthy on Trademarks & Unfair Competition § 23:5, at 23–23 (4th ed. 2008). The relevant consumer group is narrower than the general public; "for example, in a case concerning similar marks used on recreational sailboats, the possible confusion of a person who has no interest in boats at all is not relevant." Id.; see also Estee Lauder, Inc. v. The Gap, Inc., 108 F.3d 1503, 1511 (2d Cir.1997) (noting that the test "is whether confusion is probable among numerous customers who are ordinarily prudent").  While AAH argues that Sherry Iverson's experience with the e-mail from the Defendants establishes actual confusion, she is not a coder nor a member of the coding community.

A review of the factors in this case demonstrate the Parties' customer base could be confused by the Defendants' use of the CPC mark.  Both AAH and the Defendants use the same CPC mark to promote their CPC examination prep courses and advertise to the same customer base using the same advertising means.  The Defendants did not

acknowledge that the CPC mark belongs to AAH in any of its pre-suit advertising.  The Defendants state they did not know the CPC mark was registered and have since this lawsuit was filed acknowledged that CPC is a registered trademark on their advertising. Defendants' prior use of the CPC mark could in all likelihood cause confusion among codes who received advertising from Coding Leader.  However, AAH has failed to create an actual instance of actual confusion.

### (h) Summation

After analyzing the factors individually, it is now necessary to examine the factors collectively to determine whether a question of fact exists regarding the likelihood of confusion. The Eleventh Circuit has stated that the examination of the seven factors "entails more than the mechanistic summation of the number of factors on each side; it involves an evaluation of the 'overall balance.' " Custom Mfg. & Eng'g, 508 F.3d at 649. "[A] court must also take into account the unique facts of each case." Id. at 650. Additionally, the Custom Manufacturing Court noted:

> These factors imply no mathematical precision, but are simply a guide to help determine whether confusion is likely. They are also interrelated in effect. Each case presents its own complex set of circumstances and not all of these factors may be particularly helpful in any given case.... The ultimate question remains whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way.

Id. (quoting Homeowners Group, Inc. v. Home Mktg. Specialists, Inc., 931 F.2d 1100, 1107 (6th Cir.1991)).

After weighing each factor individually, there exists the possibility of confusion regarding Defendants' use of the CPC mark.  However, the Court cannot find under the standard required for summary judgment that confusion actually exists in how Coding

Leader used the CPC mark.   There are similarities in the Parties' advertising, sales methodology, and use of the mark.   However, there was no evidence presented by either AAH or Coding Leader of actual confusion.   Further, the evidence presented as to Coding Leader's bad faith was not so overwhelming that the Court could conclude that Coding Leader acted in bad faith.   Therefore, a genuine issue of material fact remains for a jury's determination as to whether or not a likelihood of confusion exists with Defendants' use of the CPC mark.

## **CONCLUSION**

While the record establishes that AAH has a valid registered service mark on the CPC mark, the Court's analysis of the Eleventh Circuit's factors demonstrate a genuine issue of material fact in regards to the likelihood of confusion.   Therefore, the Motion for summary judgment as to Count VIII is denied.

Accordingly, it is now

**ORDERED:**

Defendant, Must Have Info, Inc. d/b/a Coding Leader's Motion for Summary Judgment against American Academy Holdings, LLC (Doc. #131) is **DENIED**.

**DONE** and **ORDERED** in Fort Myers, Florida this 6th day of October, 2015.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record